SCHWEICHLER v. LEVINSON.

(Circuit Court of Appeals, Seventh Circuit. August 11, 1906.)

No. 1,263.

PATENTS—INVENTION—COAT PAD.

The Schweichler patent No. 615,500 for a coat pad is void for lack of invention, the only feature of the device which the patentee is entitled to claim as original, in view of his acquiescence in the rejection of prior

claims by the patent office, being a shoulder extension integral with the pad which does not involve patentable invention in itself nor constitute a true combination in connection with the old part but merely its enlargement or the uniting in one of two parts which had previously been sewed together.

[Ed. Note.—For cases in point, see vol. 38, Cent. Dig. Patents, §§ 27–29.]

Appeal from the Circuit Court of the United States for the Eastern Division of the Northern District of Illinois.

The bill was to restrain infringement of letters patent No. 615,500 issued December 6, 1898, to Carl W. Schweichler, for improvement in coat pads. On the hearing in the Circuit Court, the bill was dismissed for want of equity.

The material portion of the letters patent, with the drawings, are as follows:

147 F.—45

"My invention relates to wearing-apparel, and is directed to improvements in pads which are especially designed for employment in coats to shape the shoulder and adjacent portions; and my invention has for its object to so construct a pad as to insure a perfect fit at this part of the garment.

"The nature of my invention will be readily comprehended from the following detailed description when the same is read in connection with the accompanying drawings, in which Figure 1 is a view in elevation of a portion of a coat, the dotted lines indicating the form and location of my improved pad. Fig. 2 is a view of the pad before being secured in position. Fig. 3 is a top view of the pad, showing the rear shoulder extension; and Fig. 4 is a sectional view on the line 4, 4 of Fig. 2.

"Referring to the said drawings by letter, A denotes the pad, and B the rear shoulder extension.

"Two forms of pads are indicated in Fig. 1, the line x showing the outline of pad for use in a coat having a stiff front extending to the edge, and y is the line of the pad for a soft-roll-front sack-coat, for a frock-coat, or for an overcoat. Obviously the size of the pad is dependent upon the size of the coat.

"The materials of the pad are two plies a a' of canvas, or, if.desired, one ply of canvas and one of haircloth, and preferably the body-ply is so cut as to present the selvage or straight edge of the canvas at the front of the coat; and on these plies are laid one ply of cotton wadding and one ply of felt or padding. These plies are in the order stated basted together for convenience in handling and are then stitched in an overcasting or 'zigzag' sewing-machine.

"It will be observed by reference to Fig. 4 that the pad when in place presents the canvas or body ply next to the cloth of the garment and that the felt or padding ply is against the garment-lining. In order that the pad may conform properly to the breast of the wearer, it is necessary that it be made with a slight concavity, and this is effected in the following manner: The pad is placed in the zigzag-machine with the canvas ply undermost, and the line of stitching is commenced at the point b on the shoulder extension and carried to point a² on the armhole edge of the pad, the line following the curved line z, which indicates the beginning of the shoulder extension. From this point the stitching is continued in circular or approximately circular lines backward and forward, as shown, and during the stitching operations the portion of the pad near the shoulder extension is raised, and the padding or felt is kept taut. By this method the pad is given a dished or concave form in cross-section as compared with the flat form of pad, which results in the employment of vertical lines of stitching.

"At or adjacent to the point a² on the pad I provide a V-shaped gash c and on the shoulder-line near the neck-opening a similarly-shaped gash d. The function of these gashes is to obtain a perfect fit of the garment over the shoulder and around the armhole and to allow of easy movement of the arm and shoulder. The cuts are made in the first ply of canvas, which is incapable of stretching, and are on an average from one and one-half to two inches in depth, thus allowing from one-half to three-fourths of an inch stretch in the padding. e f denote what I term 'sub-gashes,' which are provided in the second ply of canvas or haircloth, dependent upon which material is employed. These sub-gashes are made at points from one to one and one-half inches at each side of the gash proper, with the result of giving a uniform stretch at this portion of the pad. g is a piece of silesia or like material which is placed at the gashes and between the two plies of canvas or the plies of canvas and haircloth.

"In stitching the pad the felt and wadding or padding or similar material under the canvas at the gash c is stretched, say, three-fourths of an inch. When the sleeve is sewed into the armhole, the seam over the gash c is stretched about three-fourths of an inch. The back part of the coat on the shoulder-seam is held tightly full over the point of gash d. The cloth covering the fore part of the shoulder must be stretched at the shoulder-seam about one-half inch, so that an easy fit around the collar and shoulders will result.

"The shoulder extension is an integral part of the pad proper and is formed by extending the materials of the pad, as shown. This extension is, however, provided with a number of extra plies of wadding, which diminish gradually in width and give to the under side of the extension a convex form, which enters the hollow place on the shoulder of the wearer. The extra plies are lettered h, i, and j and are secured by being basted at the armhole edge, and when the sleeve is sewed in the edge nearest the armhole is basted in the armhole-seam.

"My improved pad, as previously stated, will be made in sizes for different size and shape coats. With the use of the pad not only is a perfect fit obtained, but the arm and shoulder are permitted free movemen without impairing the shape of the garment."

The claims relied upon are as follows:

"1. A coat-pad made up of plies of stretching and non-stretching material secured together by substantially circular lines of stitching to give a concave form to the pad, the plies of stretching material being superimposed on the other plies, gashes and sub-gashes in the plies of non-stretching material, and a shoulder extension integral with the pad and provided with additional plies of material gradually diminished in size and stitched together at the edge only, substantially as described.

"2. A coat pad made up of plies of stretching and non-stretching materials secured together by substantially circular lines of stitching to give a concave form to the pad, and a shoulder extension integral with the pad and provided with additional plies of material gradually diminished in size and stitched together at the edge only, substantially as described."

The file wrapper and contents show that when the patent was first applied for, the claims were set out as follows:

"1. A coat pad made up of plies of stretching and non-stretching materials and having gashes formed in the non-stretching material substantially in the manner and for the purpose set forth.

"2. A coat pad made up of plies of non-stretching materials having gashes and sub-gashes therein as described, and superimposed plies of stretching material substantially as and for the purpose set forth.

"3. A coat pad made up of plies of stretching and non-stretching materials secured together by substantially circular lines of stitching to give a concave form to the pad, substantially as and for the purpose set forth.

"4. A coat pad and an integral shoulder extension thereof made up of plies of stretching and non-stretching materials stitched together as described, said extension being provided with additional plies of material gradually diminishing in size, substantially as set forth."

These were rejected upon each of the following patents: Smith, No. 236,267, Jan. 4, 1881; Dreyer No. 541,079, June 18, 1895.

Thereupon the claims above set forth were stricken out, and the following claims substituted:

"1. A coat pad made up of plies of stretching and non-stretching materials secured together by substantially circular lines of stitching to give a concave form to the pad, the plies of stitching material being superimposed on the other plies, and gashes and sub-gashes on the plies of non-stretching material, substantially as and for the purpose set forth.

"2. A coat pad made up of plies of stretching and non-stretching materials secured together by substantially circular lines of stitching to give a concave form to the pad, and a shoulder extension integral with the pad, and provided with additional plies of material gradually diminished in size and stitched together at the edge only, substantially as described."

Claim one as thus set forth was again rejected. claim two being allowed.

Thereupon claim one as above set forth, was stricken out, and the following substituted:

"1. A coat pad made up of plies of stretching and non-stretching materials secured together by substantially circular lines of stitching to give a concave form to the pad, the plies of stretching material being superimposed on the other plies, gashes and sub-gashes in the plies of non-stretching material,

and a shoulder extension integral with the pad and provided with additional plies of material gradually diminished in size and stitched together at the edge only, substantially as described." And thereupon both claims were allowed.

Other patents exhibited in the record are No. 199,780, Jan. 29, 1878, to C. L. Bradley, No. 236,267, Jan. 4th, 1881, to D. T. Smith, and No. 541,079 June 18, 1895, to S. Dreyer.

No serious question is made that the defendant has not copied the complainant's patent.

The further facts are stated in the opinion.

Francis A. Hopkins, for appellant.
Frank A. Helmer, for appellee.

Before GROSSCUP, BAKER, and SEAMAN, Circuit Judges.

GROSSCUP, Circuit Judge. It will be observed that claim one of the patent as amended, and for the second time rejected, embodied the plies of stretching and unstretching materials, secured together by substantially circular lines of stitching, to give the pad a concave form; also that the plies of stretching material should be superimposed by other plies; also that there should be gashes and sub-gashes on the plies of stretching material. This is exactly the combination of the first claim of the patent as allowed, and sued upon, except that in the first claim as allowed, a shoulder extension integral with the pad, and provided with additional plies diminished in size and stitched together at the edge only, is added. And a comparison of the second claim, as allowed, with the file wrapper and contents shows that it was this addition of a shoulder extension, integral with the pad, that brought about the allowance of the second claim also. The patentee having accepted these rejections, the patentability of his alleged invention must be determined upon the proposition: Did what was added (the shoulder extension integral with the pad) to what was already old (all the other elements enumerated) make the combination thus completed a patentable invention?

The Dreyer patent showed a pad that went over the top of the shoulder, the exact extent of this shoulder extension being left undetermined in the description of the patent. It was shown also that a shoulder pad of the character of the Schweichler extension, except that they consisted of two parts sewed together, had been in use prior to Schweichler's pad. What Schweichler did, therefore, was to make definite in description that which Dreyer had left indefinite; or possibly to unite in one pad what previously had been two pads sewed together.

We do not think that these variations amount to patentable invention. The mere extension of the pad over the shoulder blade would be obvious, it seems to us, to any person who would wish to cover that portion of the body with a pad. Besides, the pad in all other respects being old, its mere extension is not true combination. Nothing is thereby added to the functions of the pad. At most, the extension is a mere enlargement of what previously had been in use—an enlargement that carried with it the exact thought, and the exact mechanism, that characterized the original pads.

The decree must therefore be affirmed.